This is number 06-1489, In Re Buszard. Mr. Ladd, will you read it? Thomas Ladd, for Applicant's Bazaar. May it please the Court. As patent matters go, anticipation is about as simple as it gets. This case is before the Court on a Section 102 rejection over single prior art records. A fact issue. The errors presented to this Court are, however, errors of law. They do not require extension of the law, merely the application of the law as it is now written to facts beyond dispute. Applicant's claims are directed to a flexible polyurethane foam reaction mixture. Broadly stated, the Board erred in at least two substantive respects. First, the Board failed to read Applicant's claims consistent with the usage of the terms in the art. Well, wait a minute. There's something which I don't understand. As I recollect, the rule is that for anticipation, all the limitations that are involved have to be disclosed either expressly or inherently in a single reference. Is that correct? Is that a fair statement of the doctrine of anticipation? I believe that's the way this Court has set it. Yes, Your Honor. And what we have here, as I understand it, is we have the single reference. And the claims in the single reference don't disclose a flexible mixture. But the reference says that if you want, you can crush it and make it flexible. And it seems to me the real question in the case is whether that is enough to constitute a disclosure for purposes of anticipation. Now, if I'm wrong in that analysis, please tell me why. Well, Your Honor, yes, I believe you're wrong. Well, tell me why. And you're wrong because this claim concerns a reaction mixture. And what you would like to compare, Your Honor, is the foam that may result from the reaction mixture. If we had chosen to claim a foam, your analysis may be correct. It claims a reaction mixture, but Claim 1 claims a composition. With a limitation to a reaction mixture. Which would comprise in three items, one of which is the reaction mixture. And then Claim 13 is the article made from the flame retardant composition, not mixture, composition of Claim 1. That's right. Suppose you had a mixture and it was crushed, so it became flexible. Would Claim 1 cover that? If it was a flexible polyurethane foam reaction mixture, Claim 1 would cover it. What is a flexible polyurethane foam reaction mixture? What's the interpretation of that? That is a question we think that the Board should have considered when we provided that reference. But what's your position? I mean, what's your position? What is the correct interpretation of that phrase? The correct interpretation is one used by those skilled in the art. And we provided that in the Kirk Osmer reference to the Board, and the Board chose to ignore it. They told us we were too late. So, just to see if I understand. So you're saying, in other words, your view is that whatever this definition is on this one page, that that is flexible polyurethane foam reaction mixture equals, or is defined as, and then it's these two paragraphs that are found there? That is at least a polyurethane foam reaction mixture. There may be other compositions that produce flexible polyurethane foam reaction mixtures, and we would claim those as well. But don't you think the public is entitled to know what it is you're claiming? The public, those skilled in the art, certainly understand it. But your reference to that is this two-paragraph definition, and even if that were satisfactory, and I'm not clear that it is, you're saying you won't even limit yourself to that. So how are they supposed to know if it's this plus something else, but you're not telling us what the something else is? Well, I have distinguished myself from the prior art reference, which is my duty in examination. I'm not suing someone for infringement. It's my duty in examination. And what is the distinction then? The crushing, as Judge Friedman, the crushing step, as Judge Friedman pointed out, is that the distinction you're making between prior art and your mention? There are several distinctions, Your Honor, and they're in a chart in my brief. The first example is the molecular weight of the polyol. The molecular weight of the polyol, as defined, is approximately 3,000. The molecular weight of the polyol in the prior art reference is less than 500. A second factor of the polyol, the molecular weight cannot be determined. The functionality of the isocyanate for rigid foam is 2.7. That is one of the components of their polyol. I'm not sure I'm understanding this. So are you saying that your claims, or is this in the spec what you're referring to in terms of how you've distinguished this from the prior art? Is this information listed in your specification? I'm responding to Your Honor's question about the two paragraphs and how do they distinguish a flexible foam from a rigid foam. That's where I was going. I don't understand, which would help me if you could tell me. Let us suppose, for the sake of argument, a composition was made of the elements set forth in Claim 1 and after it was put together, it was crushed. Would that constitute a product covered by Claim 1? Well, in response to your question, sir, there would be no reason to crush it because if it was made of the composition of Claim 1, it would be flexible. I'm just trying to find out what you think Claim 1 means. My question to you is, I'm trying to create something that is made in accordance with Claim 1 that initially produces a rigid thing and then it's crushed. Why wouldn't that be a flexible polyurethane foam reaction mixture? Because if you needed to crush it, it would be a rigid polyurethane foam reaction mixture. But my hypothetical is that what you did after you got the rigid mixture, would you then follow what they told you in the old reference, could have been done, it was crushed. Why wouldn't that be such a mixture that Claim 1 covers? It would not be a mixture that Claim 1 covers because it would not be a flexible polyurethane foam reaction mixture. It would be, your hypothetical presumes, a rigid polyurethane foam mixture. No, no, but after it's been crushed, it still wouldn't be flexible? It's no longer the mixture. It's the foam then. It's not the reaction mixture. Once it's reacted, it is the foam. The reaction is completed. You're comparing the foam after the reaction is completed with the mixture before the reaction is completed. That's not the claim. That's the same mistake that the examiner made and the same mistake the board made. I agree that Claim 1 is specific to the flexible foam mixture and that when it's cured, it's flexible. That's what you've limited yourself to. That is correct. One of the things, however, which is disturbing, I realized that the board decided on the issue of anticipation. I have no trouble in thinking that that's very curious indeed, to take something that's solid. It's like saying, if you have a sandbag, that's flexible. Therefore, the rock from which the sand comes is flexible instead of rigid. That's impossible. One of the things that bothers me is that, in fact, the flexible foams are very well known. The Kirchhoff Encyclopedia records in a couple of paragraphs items on which there are probably thousands and thousands of references. I have no trouble with the breadth of the statement of flexible foam, but here you take flexible polyurethane, a known flame retardant for rigid polyurethane. Was there any examination at all on the obviousness of the combination? It may very well be that because it's flexible, there are distinctions which didn't come out. That is what I'm thinking of. If we agree that anticipation is a mistake of law, of misreading, you're not home free, are you? Well, I am on this record because the only rejection made by the examiner is anticipation. There is no obviousness rejection in this case. I do believe I am home free on this case. So it wasn't just the board that picked what I view as the wrong statute? I believe so, Your Honor. I believe it wasn't only the board. I suppose that doesn't mean that it's over. If, in fact, we think that it shouldn't be, that's another question. Well, I believe that the only question here for review is anticipation. There is no obviousness rejection in this case. And I should win the case that's here for decision. It shouldn't be sent back for the examiner to have another shot simply because he might be able to find another reference. He had his shot. I paid for it. We paid our application fee. We paid our examination fee. And this is the work product that we received from it. If I could address your question about obviousness and why this is not necessarily obvious and why an obviousness argument would not succeed. This is not in the record, and you'll have to take it from me because this is what I got from my inventors. There is a difference and a substantial difference in the amount of flame retardant necessary to flame retard a flexible foam versus a rigid foam. And the reason is a flexible foam has open cells. A rigid foam is a closed-cell foam. You realize it's open when you sit on the cushion. The air doesn't hold you out, and the foam doesn't break. Rather, the air releases from the cushion. It's open cell. When the flame front confronts a cell wall in a closed-cell foam, it has to burn through that cell wall onto the next one. That is not the case in an open-cell foam. The flame front can move from cell to cell through the porosity of the foam itself. Therefore, the flame front moves faster, it is hotter, and it requires more flame retardant to retard it. This is not an obvious extension. It was a true finding of a synergistic blend of flame retardants which was able to flame retard flexible foam. And it is not a logical extension from rigid at all. That's not in your specification. It is not in the specification. It is not in the record anywhere. What I have told you doesn't support a decision. It only explains your question. What you're telling us is there was a good reason in this case why the rejection was based on anticipation and not obviousness. That's right. I believe so. Yes. Okay. We'll save you rebuttal time. Or you can use it. It's up to you. You can use it now or later. Thank you. I would like to address as well the board's procedure, the board's denial and refusal to consider our definition. We believe that that's a violation of the Fifth Amendment due process clause. This court, or its predecessor court in INRAE-INDA, in 480 Fed Second, faced a similar situation. Applicant before the board received a new argument by the examiner, and the examiner's answer, they responded in their reply, they failed to provide a certain reference. They tried again on rehearing before the board, providing the reference this time. They lost again. The Court of Claims and Patent Appeals, on their turn, said that the applicant should have provided that reference at the time of the first reply brief. That is exactly what we did. We followed the guidance of INRAE-INDA, and the board told us we were too late. That denied us an opportunity to have a fair hearing, and that rule should be declared unconstitutional by this court. Thank you, Your Honor. Thank you, Mr. Ladd. Ms. Hanson? You grind up a rigid foam. You don't have a flexible foam. You have a ground-up rigid foam. May it please the Court, Your Honor, it wasn't ground up. It was actually crushed. Excuse me. You crush a rigid foam, and what you have is a crushed rigid foam, I think, again, like a sandbag. It doesn't mean that the rock was flexible. I would agree with you that the rock is not flexible, but once you crush it, it ends up with a flexible rock, i.e. sandbag. You have crushed it such that it is now flexible. I think you need to step back and look at the claim language here. But that's what's relied on for anticipation, isn't it? The claim says flexible. It says flexible foam reaction mixture. Right. And the reference uses a rigid foam reaction mixture. Well, I think you have to look at the definition of what a flexible polyurethane foam reaction mixture is. The board construed it as a mixture of ingredients which, when reacted under certain conditions, produce, at least ultimately, a flexible foam. That was the construction. And we understood, quite frankly, in his opening brief, and he's actually made the argument today, that when it was reacted, it immediately formed a flexible foam. We argue that that was not the way he claimed it, that it was not limited in that way. And so when we argue in our brief that the fact that the reaction occurs and initially forms a rigid foam, you do not change that reaction mixture. You have a so-called cross-linked or closed-celled rigid foam that you then press down. Flexible foam does not cross-link. I don't understand. Very perfectly straightforward, this chemistry is 50 years old as to what is a flexible polyurethane and what's a rigid one. Right. A rigid foam is cross-linked. And when you crush it, you break the cross-linking, and you break the closed-cell structure. You don't break the cross-link, you break it into little pieces. No, you don't. You crush the foam, you break it into little pieces. I disagree with you, Your Honor. You think you crush it, you depolymerize it? No. Then how do you break the cross-link? I think a good analogy is like a piece of cardboard. When you get a piece of cardboard that has a certain rigid structure, if you actually sit on it or press it down with something, it actually becomes more flexible. I think that is an apt analogy of what's happening here. We don't do anything to the cellular structure. What we do is we break some of the cross-linking. If you look on page 854 where they talk about taking a flat plate and pressing down on the rigid foam to break up the cross-linking... You're saying when you crush the rigid polyurethane, you get a chemical reaction that breaks the cross-links? No. I'd say you do a physical reaction, which does not change the reaction mixture. Then it's not flexible, it's just particles. No, it's still combined in one piece. I think that's what the reference says. You crush it, you get a lot of small particles. You crush it into small particles and then it becomes... The reference does not say that at all. The reference says you can use a flat plane or any other crushing mechanism to make it more flexible. It has the same characteristics as the foam in the specification of Buzzard's patent application. But if you go back to look at the claims, the claim actually asks for a composition. If you look at, for example, claim 13, which is the representative claim... Claim what? It is a flexible reaction mixture. That's one of the elements of... In no case do you have a flexible reaction mixture. In fact, even on your theory of the chemistry, which I find very strange, but even on that theory, you start, in the reference, with a rigid foaming mixture. You do. Not a flexible mixture. Correct. So where is the anticipation? At the time of the reaction, the Ealing reference creates a rigid foam, which then is crushed, in other words pressed down, to create a flexible foam. But is it a flexible mixture? That's the question. The claim speaks in terms of a mixture. And the claim 1 is one of the elements comprising the composition is a flexible foam reaction mixture. And I take it what the claim is that to be sure the prior reference doesn't provide for a flexible mixture, but provides for a rigid mixture, but the reference teaches that if you want to make it a flexible mixture, you just have to crush it. That's the basic theory, isn't it? That is the basic theory, but you have to understand that he has said on page 7 of his reply brief that his claim is not limited to a flexible reaction mixture at the time of reaction. No, he said it's not limited to... I don't have it in front of me, but I think he said it's not limited to any particular formulation. It's also not limited to any particular formulation. If you go back to the claim language, they are very broad claims. A flexible foam... It wasn't rejected on that ground, was it? Yes. As being unduly broad or unsupported or whatever? It's not that it's unduly broad or unsupported in terms of a 112 rejection, not supported by the specification language, but if you look at it, if he takes his claim, and he says, look, I have a composition, a flame retardant composition with two flame retardants and a flexible polyurethane foam reaction mixture, if there is, let's say, a seat cushion out there, which, of course, Ealing's reference teaches, then he's not going to go back and say, how was that made? How was that made? Did they actually react? I think what he is saying is basically there's no anticipation because he claims a flexible reaction mixture and what the prior art shows is a rigid mixture and that when it's crushed, it's no longer a mixture. That's what it seems to me. No, it's still the exact same mixture. It's all the chemicals. No, but that's his argument, as I understand it, that the critical question that you've got to look to is what is the mixture? And what he says is the prior art shows a rigid mixture, my claim shows a flexible mixture, and the rigid mixture doesn't become a flexible mixture when in the mixing process it's crushed. It's crushed in the mixing process, isn't it? No, it's crushed afterwards. But what he's saying It's crushed afterwards? It's crushed afterwards. You take it out of there, it's rigid like you'd see on insulation walls, and you press it down and it becomes flexible such that it becomes used for seat cushions, which are the exact same end-use applications as Mr. Buzzer's applications. Let me see if I can clarify some of this in my mind. The board's interpretation of the phrase that we've been talking about was any reaction mixture which produces, at least ultimately, the flexible foam. That's right. If he had been willing to say, to write in his spec or whatever, that any reaction mixture which produces immediately a flexible polyurethane foam, would that have been acceptable? Would that have avoided the anticipation? It might have been acceptable to avoid the anticipation in this particular instance. So the problem the board had was that at least they read the language as not to exclude ultimately achieving the flexibility at the end, which, in your view, includes the prior art. Exactly. And he said in his reply brief, I do not limit it to any particular time, which makes sense because he doesn't want to, if this patent issue is as is, he does not want to then take these claims and try to enforce them. Claim 13, a flexible foamed article made from the composition of Claim 1. If he finds a flexible foamed article that has flame retardants in it and is flexible, he doesn't want to go figure out how that's made. His claims are not process claims. It's made from Claim 1. Claim 1 requires the flexible mixture. No, it has a flexible polyurethane foam reaction mixture. And he has not contested, he contested the timing of when it became flexible in his opening brief and then withdrew that challenge in his reply brief. And so in other words, he agrees that it becomes a flexible foam, at least ultimately, after a reaction. Let me ask you a somewhat different question. As I understand the board's opinion, it said that in Claim 13, which says a flexible foamed article made from the flame retardant composition of Claim 1, that even though perhaps Claim 1 doesn't cover this, Claim 13 does. Is that right? The board selected Claim 13 to be the representative claim. Let me ask you a more specific question. Suppose for the sake of argument, we were to conclude that Claim 1 is invalid for any reason. Would that necessarily make Claim 13 invalid? And if not, why not? Let me pose you an absurd hypothetical. Let's suppose for the sake of argument, you're trying to determine what Claim 13 means. And what you have is, you have a composition of Claim 1, but instead of the ester, they have bicarbonate of soda in it. Would Claim 13 cover that? Would that be something made from the flame retardant composition of Claim 1, if they did not meet the requirements of Claim 1? I would think not, but as I read the board's opinion, it seems to suggest that may be okay. Well, the board construed it as an initial step, as analogous to a product-by-process claim. So they did not look at it as the first step, did not look to the specific elements in the composition. And what they said was, it is a flexible-foamed article. But how can you... On what theory do you ignore the limitation of an article made from the flame retardant composition of Claim 1? On what theory do you say, we don't have to look and see whether it's made from the flame retardant composition of Claim 1? Well, they didn't ignore it. As a second step, they went and looked exactly at the limitations of Claim 1. What do you say as a second step? Is it enough to be a flexible-foamed article? Does Claim 13 cover any flexible-foamed article? Certainly not. Well, there's two different... If you agree with the analogy, then it's analogous. Well, forgetting the analogy, I'd just like to ask a question. I have something here. I have a claim. Here's a flexible-foamed article. And let's assume for the sake of argument it's made of some sort of plastic. Is that covered by Claim 13? And if not, isn't the reason that it's not covered is because it's not made from the flame retardant composition of Claim 1? I don't understand that. I've never seen a claim drafted in this way in which you first have a description and then you have something else saying it embodies that description. I agree with you, Your Honor. It's a very unique claim. I've not seen one either. And that's, I think, in part why, as an initial step, the board analogized it to a product-by-process claim, which, at the Patent Office, we can ignore the process limitations. In litigation... Well, if that's so, then it seems to me by the same theory that the board is adopting, you can ignore the product limitations of the other claim. In prosecution, that's right. So under my... And to come back to my hypothetical, as long as I have a flexible-foamed article, Claim 13 covers it, without regard to what it was made from. That's correct. That's correct, Your Honor. It's a very broad claim. A flexible-foamed article made from two... Well, it isn't such a... It's a huge claim, except for the fact that the claim is limited to being made from the composition of Claim 1. Well, the composition of Claim 1 lists three of the potential ingredients. It lists two flame retardants and a flexible polyurethane foam reaction mixture. Now, if you look at the definition of not the entire five-word phrase, but the three-word phrase, flexible polyurethane foam, in the Kirk-Othmer Encyclopedia, you will see that it encompasses a wide variety of products. A wide variety of products. And in fact, if you read... Ealing itself has 12 pages of products or potential reactants you can use to make polyurethane foam, which are the same reactants... Let me ask you a question. Sure. This seat that I'm sitting on in my chair, it feels to me like it's got flexible foam in it. I think it does. Does that violate Claim 13? I would think it would, under the board's interpretation. Only if it has the flame retardant of the dialkyl tetrahydrothalate. If I were suing, if I were suing in litigation, yes, it would have to have the dialkyl tetrahydrothalate. Whether you were suing or not, it has to have, in order to be encompassed in Claim 13, it has to be flexible foam. It has to have the dialkyl tetrahydrothalate ester. It has to have the phosphorus-containing flame retardant with at least 5 weight percent phosphorus. You can say that this is a broad claim. It is. One of the things which I asked Mr. Ladd about is the question of using known flame retardants with rigid foams for flexible foams. He says that there's an answer to that that would have been provided had it been raised in prosecution, but that it wasn't raised. Well, he made the statement that there's some synergistic blend of flame retardants used in a flexible foam versus a rigid foam, but yet he has none of those limitations or that synergistic blend. He doesn't say about this combination in a particular form. You don't have to put why something works in your claim if, in fact, it meets the requirements. If, in fact, this is a novel composition, the position of the office is that it doesn't meet the test of novelty, right? No, the position of the office is... It must be. It's anticipation. Yes. If it's not novel. That's right. But it already exists. It already exists in the prior art. Ealing discloses, as broadly as these claims are written, Ealing discloses all of the elements of these claims. Even though it doesn't include the element of the flexible foam reaction mixture, nonetheless you say that, what, that that exists even though it's not in the claim? Only if you construe that the flexible polyurethane foam reaction mixture has to be flexible at the time of reaction, which is not in the claim, at the time of reaction, then I would say that Ealing doesn't disclose it. Well, I suppose I would say, but it says that the foam reaction mixture, that by definition means a mixture which will produce a foam reaction. That's right. Not flexibility after it's been reacted. It's still the same reaction mixture, though. It's still the same reaction mixture. They haven't done anything... It's not like salad dressing, where you have a whole bunch of different... You have oil, water, and some other ingredients that is just a mixture, there's no reaction, and if you let it go... You can say it's broad, but you didn't tell him it was too broad, you're telling us it's broad. But that didn't come up in examination at all. Yes, it did. It came up when the examiner made that argument. His argument was anticipation. It was anticipated by taking a rigid foam and crushing it. What the examiner said was that in the context of patentability, rigid and flexible don't have... Whether it's rigid and flexible and you put the same flavor retardants in one or the other, you use polyols and diisocyanates for both. And the only thing that's different is maybe in a rigid foam, you can add a cross-linking agent. That's one of thousands of ways to make a rigid foam versus a flexible one. The only way. No, you can change... Cross-linking is the only way to have a rigid polyurethane. I agree with that, but there are thousands of ingredients that you could change with the nature of the... I wasn't raised by the office, so that occurs to me also, but it wasn't raised by the office. It wasn't a basis of rejection. Well, it didn't need to be because none of those ingredients are in these claims. Okay, I think we will repeat ourselves. I want to ask you once more on Claim 13. Do you agree it has to be made of a flame retardant composition? Claim 13? I'm sorry? Does Claim 13 require that the article be made from a flame retardant composition? I'm eliminating the words of Claim 1 in that which I take it you say you can do. I'm saying that the first construction that the board was did eliminate the three ingredients of Claim 1, which was just looking at simply the flexible foamed article. The alternate construction included those elements. My question to you is does a flexible foamed article that is what Claim 13 covers require that it be flame retardant? Yes, you would include the ester, the phosphate, and... I'm not asking what you would include. I'm asking if it has to be flame retardant. I think it would have to include those specific flame retardants because they are actually spelled out. That's contrary to what... I don't understand why it would have to include those specific flame retardants but not the flexible mixture. The Claim 1 has said it comprises three elements and you tell me it's got to include the first two but doesn't have to include the third. No. What I said was that the board construed it two ways. One, to ignore all three, which they set out and said it was analogous to a product by process claim. The second was to include all three. I'm not saying it should be two and not three. But the second way that they looked at it to be complete was to say, look, we have a flexible foamed article here and it is made from two flame retardants and what is a flexible polyurethane foam reaction mixture, which they construed as a mixture of ingredients that when reacted at least ultimately produces a flexible foam. That's exactly what Ewing discloses because while during the exact reaction it produces a rigid foam, it was crushed and then produces, which removes some of the cross-linking and crushed some of the open cells to make... some of the closed cells to make open cells. Okay, we must move on. We've exhausted your time but we're giving Mr. Rad a little more time because he's run over. Okay, thank you, Your Honor. I'll be brief, Your Honor. With respect to the question about the form of the claim, it would be our objective as patentees to have a claim that is enforceable against our competitors as opposed to our customers. And that's why we structured the claim as we had. It may not give us necessarily that opportunity but at least that's the desire. Are you claiming only what has to be flexible at the time of reaction? I'm claiming a flexible polyurethane foam reaction mixture. And what it does, as understood in the art, is after it is reacted and makes a foam, it is... the foam is then flexible. It does not require a subsequent crushing step to make it flexible. Crushing forms no part of reaction or reacting. Crushing is not a part of that work. And that's what we claim. I would like to point as well to the board's definition. Although they didn't accept the art recognized definition, they formulated their own definition of what is a flexible polyurethane foam. And at page A6 of the appendix, the board said, this is because the corresponding mixture of the reference includes ingredients which are reacted under certain conditions to produce a polyurethane foam which is transformed from a rigid to a flexible form by a crushing technique. The board recognized that the reference does not prepare a flexible polyurethane foam. It is not a flexible polyurethane foam reaction mixture. The relief that we request, Your Honor, is that this cause be remanded to the board with direction to issue our claims over the art of record and that it find that patent office rule 4141A2 violates the definition. If we were to agree with your request for the first item, why do we need to decide the second? Because I don't think that the next person who is subjected to that form of rejection should be subjected to it. You're sort of really, it seems to me, saying we should give a little advisory opinion on the validity of the board's procedure. This is an instance... I mean, if we were to do what you want us to do, which is to send us back with instructions to the board to issue your patent, I don't see why we have to get into questions of whether the procedure that followed in this case was improper or proper. I suspect that if you follow the minimalist approach to decide the least issue necessary to affect the appropriate result, your steps would be appropriate. However, you will leave the next applicant to be the victim of an inappropriate patent office procedure. It's not a minimalist approach not to grant advisory opinions. It's hardly advisory, Your Honor, because the facts have presented themselves. This is not a hypothetical case. This is a real case. We were really subjected to this. But it may be an issue that we don't have to decide in order fully to dispose of this case. Well, we'll take that under investigation. I appreciate the court's time. Thank you. Thank you, Mr. Ladd and Ms. Hanson. The case is taken under submission.